# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITZI M. CRENSHAW,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 16-00955-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.    **INTRODUCTION**

Plaintiff Mitzi M. Crenshaw ("Plaintiff") challenges the Commissioner's[1] denial of her application for disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II.    **PROCEEDINGS BELOW**

On July 26, 2010, Plaintiff protectively applied for DIB alleging disability beginning June 8, 2009. (Administrative Record ("AR") 77, 250-58.) Her application was denied initially on November 16, 2010, and upon reconsideration

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill, the current Acting Commissioner of Social Security, is hereby substituted as the defendant herein.

on March 11, 2011. (AR 100-01, 120-24, 126-30.) Plaintiff requested a hearing, and a hearing was held on March 16, 2012. (AR 72-92.) Appearing unrepresented, Plaintiff testified, along with an impartial vocational expert. (AR 74-91.) On September 4, 2012, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[2] from June 8, 2009, through the decision date. (AR 112.) Plaintiff requested that the Appeals Council review the decision, and on March 13, 2014, the Appeals Council vacated the decision and remanded the case to an ALJ. (AR 117-19.) Upon remand, the ALJ was directed to further evaluate the effect of a prior ALJ decision from 2003,[3] give further consideration to treating source opinions and explain the weight given to such opinion evidence, and further evaluate Plaintiff's ability to perform her past relevant work. (AR 117-19.) After remand, a second hearing was held on June 24, 2014, at which Plaintiff, represented by an attorney, testified. (AR 27-71.) An impartial medical expert and an impartial vocational expert also testified at the hearing. (AR 33-45, 60-70.) On July 23, 2014, the ALJ found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from June 8, 2009, through the decision date. (AR 11-21.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-4.) Plaintiff filed this action on May 10, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 14.) At **step two**,

---

[2] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[3] Plaintiff was previously found disabled from May 2000 through July 2002. (AR 77.)

2

the ALJ found that Plaintiff has the severe impairments of carpal tunnel syndrome, diabetes mellitus with noncompliance, hypertension, renal mass, gastroesophageal reflux disease, obesity, history of left Achilles tendon repair, and Baker's cyst. (AR 14.) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 14.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

> [P]erform light work . . . except [she] can perform occasional postural activities; she cannot climb ladders, ropes and scaffolds; she is limited to occasional fine or gross manipulations; [she] must avoid exposure to hazards; she must avoid concentrated exposure to extreme temperatures; she requires restroom access; and she cannot perform work where intact sensation of the hands is required for safety.

(AR 15.)

At **step four**, the ALJ found that Plaintiff is able to perform past relevant work as a lobby director/escort as actually performed. (AR 20-21.) Accordingly, the ALJ found that Plaintiff was not disabled. (AR 21.)

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making

findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotations omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see also Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raised two issues in her appeal. First, she contends that the ALJ failed to properly consider and explain what weight he assigned to the opinions of her treating physician, Dr. Edwin Ashley, in violation of the remand order. Second, Plaintiff contends that the ALJ failed to properly consider Plaintiff's testimony and make proper credibility findings. The Court addresses each claim in turn.

### A. Compliance with Remand Order and Evaluation of Dr. Ashley's Opinions

#### *1. Pertinent Law*

An ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeal's Council's remand order." 20 C.F.R. § 404.977(b).

It is well settled in this Circuit that courts "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2)

4

those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester*, 81 F.3d at 830. Where the treating physician's opinion is contradicted, the ALJ must provide "specific and legitimate reasons" that are supported by substantial evidence. *Lester*, 81 F.3d at 830. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### *2. Dr. Ashley's Opinions*

Dr. Ashley was a Qualified Medical Evaluator and treating physician in connection with Plaintiff's workers' compensation claim. He made findings of positive tenderness bilaterally, positive Tinel's sign and positive Phalen's test, and decreased sensation bilaterally. (AR 422, 425-26, 452-57, 534-37, 548-58.) He diagnosed right forearm tendinitis and right carpal tunnel syndrome, status post release, and treated Plaintiff with a topical analgesic, a wrist support, and Celebrex. (AR 422, 425-26, 452-57, 534-37, 548-58.) He noted objective findings of EMG/nerve conduction velocities tests and surgical intervention confirming bilateral carpal tunnel syndrome. (AR 555-58.)

Since July 2002, Dr. Ashley opined that Plaintiff could perform modified work, with restrictions. (AR 78.) On June 1, 2009, Dr. Ashley opined no lifting/carrying more than ten pounds continuously; no climbing, twisting, pushing, pulling, grasping, or performing fine manipulation; bending or stooping limited to four hours, reaching above the shoulders limited to two hours, and driving limited to four hours. (AR 427.) On August 8, 2011, Dr. Ashley opined that Plaintiff could continue at modified duty at work with restrictions of no forceful pulling or squeezing and no lifting with the bilateral hands greater than ten pounds. (AR 555-59.) On June 11, 2012, Dr. Ashley opined no limitations with sitting, walking, standing or reaching; reaching above the shoulder limited to two hours; twisting,

bending, stooping limited to four hours; no repetitive movements of wrists and elbows; pushing, pulling, and lifting limited to ten pounds; and squatting, kneeling, and climbing limited to four hours. (AR 520, 567-69.) In July and September 2012, Dr. Ashley opined that Plaintiff could perform modified work with no typing or data entry, no lifting over ten pounds with right and left, and no handling or fine manipulation. (AR 570, 603-04, 667.) On June 24, 2013, Dr. Ashley opined that Plaintiff could perform modified work with no lifting by both hands over ten pounds, no forceful pulling or squeezing by both hands, no typing or data entry, and no fine manipulation. (AR 669.) On December 16, 2013, Dr. Ashley limited Plaintiff to modified work with no lifting by both hands over ten pounds, no forceful pulling or squeezing by both hands, and no fine manipulation. (AR 674.)

### 3. *ALJ Decision*

The ALJ discussed and considered the various medical opinions provided by Dr. Ashley. He gave minimal weight to Dr. Ashley's opinions, stating:

> The undersigned has given minimal weight to Dr. Ashley's opinions because they are not well supported by the longitudinal treatment records at the hearing level. While [Plaintiff] continues to experience ongoing symptoms, as noted above, her course of treatment has been rather conservative, consisting of a stable course of oral medication (Celebrex). She has not experienced significant exacerbations of her symptoms. [Plaintiff] also has not required narcotic painkillers, further diagnostic testing for carpal tunnel syndrome residuals, injection therapy, physical therapy, or long-term pain management. She has generally retained adequate grip strength and range of motion of the hands throughout Dr. Ashley's treatment history with her. As such, Dr. Ashley's assessments for sedentary work (with respect to [Plaintiff's] capacity to lift, carry and perform

//

6

| | |
|---|---|
| 1 | manipulative functions) are overly restrictive in light of the records at |
| 2 | the hearing level. |

(AR 19.) The ALJ also noted that no other treating doctor recommended significant restrictions on Plaintiff's ability to work. (AR 19.)

The ALJ gave great weight to the opinion of the non-examining medical expert, Dr. Darious Ghazi, with respect to Plaintiff's capacity for fine manipulation and her ability to stand, walk and sit. (AR 18.) Dr. Ghazi opined that Plaintiff could perform occasional fine manipulation and stand or walk for up to six hours with breaks every two hours, and had no limitations in lifting, carrying, pushing or pulling. (AR 34-37.) The ALJ also gave great weight to the State Agency medical consultants' overall assessments, which limited Plaintiff to a range of light work with occasional manipulative (fine and gross), postural and agility abilities, and no climbing of ladders, ropes or scaffolds and exposure to hazards. (AR 18, 469-77.) He found these limitations consistent with the record, which showed that Plaintiff was able to maintain adequate grip strength and range of motion of the hands and fingers subsequent to her carpal tunnel surgeries. (AR 18.) He also noted that Plaintiff's treatment had been conservative with oral Celebrex for pain management, and she had not required further invasive treatment such as injection therapy or further surgical intervention. (AR 18.) He further noted that the treatment records showed no evidence that Plaintiff had experienced any deficits to her ability to ambulate effectively due to neuropathy. (AR 19.)

### 4. *Analysis*

The Court finds that the ALJ complied with the remand order, and the reasons given by the ALJ for discounting Dr. Ashley's opinions, which were contradicted by other medical opinions, are specific and legitimate ones supported by substantial evidence.

With respect to Plaintiff's argument that the ALJ did not comply with the remand order by properly considering and explaining what weight he assigned to

7

Dr. Ashley's opinions, the argument is rejected. The ALJ discussed Dr. Ashley's opinions, explained the weight they were accorded, and gave reasons for why they were discounted. (AR 17-19.) Notably, Plaintiff does not contend that the ALJ misrepresented Dr. Ashley's opinions, nor does Plaintiff challenge the reasons the ALJ gave for discounting the opinions.

Nevertheless, the Court concludes that the ALJ properly considered Dr. Ashley's opinions and gave specific and legitimate reasons supported by substantial evidence for discounting the opinions. First, the ALJ found that Dr. Ashley's opinions were not well supported by the treatment records, noting that Plaintiff retained adequate grip strength and range of motion of the hands throughout Dr. Ashley's treatment history. (AR 19, 459, 535, 549, 556, 568.) An ALJ may discount a treating physician's opinion when it contradicts his treatment notes. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ also acknowledged that the records also show, at varying times, positive tenderness, positive Tinel's, and positive Phalen's, but concurred with Dr. Ghazi that such findings did not support a reduced range of sedentary work with no fine manipulation. (AR 18, 37, 535, 549, 556.) The ALJ also noted that Plaintiff's non-compliance with medication may have caused increased symptoms. (AR 18.)

Second, an ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected opinion of treating physician where physician had prescribed conservative treatment and plaintiff's activities and lack of complaints were inconsistent with the physician's disability assessment). Here, the ALJ acknowledged that Plaintiff had had two carpal tunnel release surgeries on her right hand and one on her left hand, the last one being around 2001, but he also correctly noted that Plaintiff did not require narcotic painkillers, further diagnostic testing for carpal tunnel syndrome residuals, injection therapy, physical therapy, or long-term pain management. (AR

8

15, 19, 53-54.) Indeed, the treatment notes indicate that Plaintiff was treated conservatively with Celebrex (a nonsteroidal anti-inflammatory drug), topical analgesics, and a wrist brace. (AR 425-26, 452-57, 534-37, 552-54, 555-58, 670.) *See Nettles v. Colvin*, 2014 WL 358398, at *15 (C.D. Cal. Jan. 31, 2014) (finding a knee injection and Celebrex was conservative treatment); *Hernandez v. Astrue*, 2012 WL 4466580, at *9 (N.D. Cal. Sept. 26, 2012) (finding wrist splints worn at night and the use of naprosen and Celebrex was conservative treatment).

Third, the ALJ questioned Dr. Ashley's opinion because no other treating source recommended significant restrictions. (AR 19, 593, 608-60.) An ALJ may also discount a treating physician's opinion when it is "unsupported by the record as a whole or by objective medical findings." *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014) (citing *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)). Here, the record contains treatment records from other treating sources who were aware of Plaintiff's carpal tunnel syndrome, and there is no evidence that they recommended significant restrictions.[4] (AR 593, 608-60.)[5]

The Commissioner argues that "[t]he fact that Plaintiff remained capable of working at well above a substantial gainful activity level during a time when Dr. Ashley imposed seemingly disabling limitations provided yet another legitimate

---

[4] As the ALJ noted, the one doctor who limited Plaintiff's ability to stand and walk to one hour clarified that the limitations pertained only during her recovery from a cryoablation procedure and did not assess use of her hands. (AR 19 n.3, 504-10.)

[5] To the extent Plaintiff argues that the ALJ erred at Step Four because her past relevant work "cannot be found to be an occupation that exists in significant numbers in the national economy," the Court is unpersuaded. (Joint Submission "Joint Sub." at 7-8.) The Social Security regulations state that "[w]e will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(b)(3). Thus, Plaintiff's argument that the ALJ erred at Step Four because the modified work does not exist in significant numbers is unsupported and rejected.

basis for disagreeing with Dr. Ashley's conclusions." (Joint Submission ("Joint Sub.") at 11.) The ALJ did not discuss this reason in rejecting Dr. Ashley's opinions, and therefore, the Court may not consider this reason. *See Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.") (citation omitted).

Accordingly, remand is not warranted on this issue.

**B. ALJ's Evaluation of Plaintiff's Testimony and Credibility Findings**

Plaintiff alleges that the ALJ erred in evaluating Plaintiff's testimony and in reaching his credibility findings. An ALJ need not accept a claimant's statements as to subjective pain or symptoms, but can reject them for clear and convincing reasons. *Lester*, 81 F.3d at 834. Plaintiff asserts that the ALJ's reasons for finding her claims not credible, specifically regarding her upper extremity limitations, do not meet this standard. The Court disagrees.

With respect to her upper extremity limitations, Plaintiff testified at the March 2012 hearing that she can no longer work because of difficulty grasping and holding objects in her hands due to weakness and numbness. (AR 15, 78-80.) She can lift 15 pounds "off and on." (AR 81.) She has trouble buttoning her clothes, changing sheets, and typing on a computer. (AR 78, 81-82.) In an undated letter to the Appeals Council addressing the ALJ's September 2012 decision, Plaintiff wrote that although she testified that she could occasionally lift 15 pounds, she could only do so with pain and had "not lifted anything weighing more than 15 pounds since being diagnosed with carp[a]l tunnel syndrome." (AR 324.) At the June 2014 hearing, she testified that her condition had not changed in the last two and a half years. (AR 32.)

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina*

*v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (AR 16.) The ALJ relied on the following reasons: (1) Plaintiff admitted that she could lift up to 15 pounds occasionally and could perform an "adequate" range of activities of daily living; (2) Plaintiff stopped working because she was laid off; and (3) the objective medical evidence did not support the alleged severity of symptoms. (AR 16-20.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

First, the ALJ found that although Plaintiff may have difficulty lifting and carrying up to 15 pounds, she admitted that she could do it, albeit with pain. (AR 16, 324.) In addition, the ALJ noted that Plaintiff testified that she could drive, shop, and perform light cleaning and cooking, although these activities were hindered by her lifting and carrying limitations. (AR 16, 80-85, 324-26.) The ALJ found that "[t]he ability to perform the foregoing activities falls well within the

11

residual functional capacity . . . [, and Plaintiff's] ability to participate in such activities undermines the credibility of [Plaintiff's] allegations of disabling functional limitations." (AR 16.) Plaintiff argues that her ability to lift and/or carry up to 15 pounds or perform certain limited activities of daily living does not equate with the ability to perform light work, which requires lifting up to 20 pounds occasionally and ten pounds frequently. (Joint Sub. at 12.) The Commissioner argues that the ALJ's interpretation of the record is rational and must be upheld. (Joint Sub. at 15.) The Court finds that because the ALJ did not explain why he found Plaintiff's activities consistent with light work, or how her limited activities undermined her allegations that she could no longer work because of difficulty grasping and holding objects in her hands, this was not a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's credibility.

Second, the ALJ discounted Plaintiff's credibility because Plaintiff's alleged limitations were not what caused her to stop work; rather, she was laid off. (AR 16.) *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (as amended) (the fact that claimant stopped working because he was laid off rather than due to his injuries was a sufficient reason for disregarding his testimony). Here, Plaintiff testified that she last worked for the U.S. Postal Service in a modified position for injured employees from July 2002 until June 2009. (AR 46, 77-78.) In the modified position, she was able to work with her restrictions of no lifting over ten pounds, no fine manipulation for more than one hour a day, no gross manipulation for more than two hours a day, no twisting, and no pushing or pulling. (AR 78-80.) She was let go in June 2009 because the U.S. Postal Service no longer provided work for injured workers, and they would no longer accommodate her work restrictions. (AR 46, 76-77, 80.) As the ALJ noted, Plaintiff testified that if the job had not been eliminated, she would have continued to work in that position. (AR 16, 55.) Plaintiff argues that the fact that she worked in an accommodated position does not impact her credibility regarding the severity of her symptoms. (Joint Sub.

at 12-13.) The fact remains, however, that Plaintiff stopped working because she was laid off, not because of her physical limitations, and this was a clear and convincing reason for the ALJ to discount Plaintiff's credibility.[6]

Third, the ALJ found that the objective medical evidence did not support Plaintiff's claims regarding the alleged severity of her symptoms. (AR 16-20.) Plaintiff argues only that the ALJ could not rely on this reason alone to discount her credibility. (ALJ 13-14.) Although an absence of objective medical evidence to support a claimant's complaints cannot provide the only basis to reject her credibility, it is a factor that an ALJ can consider in discrediting subjective symptom testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *see also Burch*, 400 F.3d at 680-81. As discussed above, and as the ALJ recounted, evidence of adequate grip strength and range of motion, conservative treatment, and the opinions of Dr. Ghazi and the State Agency medical consultants did not support the alleged severity of Plaintiff's symptoms. (AR 16-20.) This was a clear and convincing reason for the ALJ to discount Plaintiff's credibility.

Because the Court found that one of the ALJ's reasons for discounting Plaintiff's credibility is not clear and convincing, the Court must decide whether the ALJ's reliance on that reason was harmless error. *Carmickle v. Comm'r, Soc. Sec.*

---

[6] To the extent Plaintiff argues that the ALJ erred in finding that she "is now capable of performing that modified occupation in a competitive work setting when she in fact never performed that occupation in a competitive work setting," the argument is not compelling. (Joint Sub. at 13.) The ALJ's Step Four finding was that Plaintiff could perform her past relevant work as a lobby director/escort as actually performed. (AR 21.) An ALJ does not err in concluding that a claimant was not disabled because the claimant could perform past relevant work that was accommodated. *See Giordano v. Astrue*, 304 F. App'x 507, 509 (9th Cir. 2008) ("It was . . . reasonable for the ALJ to conclude that [claimant] could return to her past relevant work, given that [claimant's] own description of her past jobs accommodated all of the limitations."); *Sharkey v. Comm'r, Soc. Sec. Admin.*, 2008 WL 3289267, at *6 (D. Idaho Aug. 8, 2008) (ALJ did not err in considering claimant's previous accommodated work as past relevant work or in concluding that claimant could perform her past relevant work as actually performed).

*Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id*. The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id*. (emphasis in original) (citing *Batson*, 359 F.3d at 1197). Here, given the discussion about the lay-off and the lack of supporting objective evidence, the Court concludes that the ALJ's credibility finding is legally valid and supported by substantial evidence.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: May 16, 2017

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**